Eric Johnson PEACOCK, Plaintiff,

v.

COUNTY OF MARIN, Defendant.

No. C–96–1574 BZ.

United States District Court, N.D. California.

Jan. 23, 1997.

Eric J. Peacock, Hacienda Heights, CA, pro se.

Renee A. Giacomini, San Rafael, CA, for Marin County.

·ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S MO-TION FOR SUMMARY JUDGMENT

ZIMMERMAN, United States Magistrate Judge.

Eric Johnson Peacock ("plaintiff") claims under Section 504 of the Rehabilitation Act (29 U.S.C. § 794), Title II of the Americans With Disabilities Act ("ADA") (42 U.S.C. § 12188), and 42 U.S.C. § 1983 that the County of Marin ("defendant") unlawfully discriminated against him on the basis of his myopia when he applied for a job as a deputy sheriff.

In April 1995 plaintiff applied for a position as a Marin County Deputy Sheriff I—Lateral. The initial application packet, mailed to plaintiff, included a Supplemental Application Form which purported to elicit minimum qualifications for the deputy sheriff's position. Plaintiff's Exhibit 49. Sections 1 and 3 of the Supplemental Application asked yes-or-no questions which dealt directly with job-related skills. Section 2 of the Supplemental Application asked a three-part ·question: "Do you have: visual acuity of 22/20 vision uncorrected; OR visual acuity between 20/20 and 20/70 in both eyes correctable to 20/20; OR visual acuity between 20/70 and 20/100 in both eyes correctable to 20/20 vision?" Plaintiff's Exhibit 49. Plaintiff truthfully answered no to all three questions. *Id.* Plaintiff's visual acuity is less than 20/800. Plaintiff's Exhibit 48; Defendant's Exhibit G.

Before completing the application, plaintiff asked one of defendant's employees if he was required to complete the Supplemental Application in order to apply for the Deputy Sheriff I—Lateral position and was informed that his application would not be accepted without the form. When plaintiff asked whether defendant had a vision standard for the position, he was referred to defendant's Job Specification. Plaintiff's Declaration, at 2–3. Defendant's Job Specification for the Deputy Sheriff I—Lateral position describes the minimal physical characteristics in relevant part as, "[v]isual acuity of not less than 20/70 (20/70 to 20/100 if approved by Marin County Medical Division) in both eyes cor-

rectable to 20/20 vision. . . ." Plaintiff's Exhibit 39. Plaintiff completed the entire application and mailed it to defendant.

Plaintiff's application was reviewed by Sgt. Stewart of the Marin County Sheriff's Department who decided that plaintiff met the minimum requirements for the job and should be scheduled for the interview stage of the hiring process. Plaintiff was interviewed by a panel of three County of Marin employees. After the interview, plaintiff was placed on an eligibility list for deputy sheriff openings. Plaintiff's name was not reached before expiration of the list, and no further action was taken on plaintiff's Deputy Sheriff I—Lateral application. Eventually, plaintiff filed the instant action in which he seeks declaratory and injunctive relief and damages. Defendant has now moved for Summary Judgment.[1]

Rule 56 of the Federal Rules of Civil Procedure provides for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. ("Rule") 56(c). A genuine issue of material fact exists if a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court does not make credibility determinations or weigh conflicting evidence, and views the evidence in the light most favorable to the nonmoving party. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–631 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

A moving party on a motion for summary judgment who does not have the burden of persuasion at trial bears the initial burden of identifying those portions of the materials on file that demonstrate the absence of a genuine issue of material fact. This burden does not require the moving party to disprove the opponent's claim; it can be met merely by demonstrating the insufficiency of the opponent's evidence to establish an element essential to her claim. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986). If the moving party meets this burden, the burden of production then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by depositions, answers to interrogatories, or admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53).

In order to establish a case under the ADA and the Rehabilitation Act, plaintiff must show that he is a qualified individual with a disability who suffered an adverse employment action because of his disability. *Sanders v. Arneson Products*, 91 F.3d 1351, 1353 (9th Cir.1996); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 831 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666.

In the instant motion, defendant argues that it should be awarded summary judgment because (1) plaintiff's myopia does not constitute a disability for purposes of the ADA and the Rehabilitation Act; (2) plaintiff did not suffer an adverse employment action; and (3) even if plaintiff does have a disability and did suffer an adverse employment action, plaintiff has not shown that he suffered the adverse employment action because of his disability.[2]

Defendant argues that plaintiff's myopia does not constitute a disability under the

---

1. This case was originally assigned to U.S. District Judge Claudia Wilken. The parties consented to have the case reassigned to a magistrate judge for all proceedings pursuant to 28 U.S.C. § 636(c). Joint Case Management Statement and Proposed Order, August 27, 1996.

2. Defendant does not dispute that plaintiff was qualified for the position of Deputy Sheriff I—Lateral. Plaintiff was found to have met the minimum requirements for the position and was placed on defendant's eligibility lists. Defendant's Exhibits A, F.

ADA or a handicap under the Rehabilitation Act, because it is undisputed that plaintiff's vision is correctable to 20/20 by means of contact lenses. Defendant cites cases outside of the Ninth Circuit which have held as a matter of law that correctable vision is not a disability or handicap. *Joyce v. Suffolk County,* 911 F.Supp. 92 (E.D.N.Y.1996); *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). However, under the law of the Ninth Circuit, courts are not to consider mitigating measures in determining whether an individual is disabled. *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (1996) (citing 29 C.F.R. § 1630.2(h) (App.)). Under 29 C.F.R. § 1630.2(h) (App.) the existence of an impairment, for ADA purposes, is to be determined without regard to mitigating measures such as medicines, or assistive or prosthetic devices. By way of examples, an individual with epilepsy who is able to completely control her impairment by medicine and an individual with hearing loss who is able to control his condition through use of a hearing aid are considered to use these measure to mitigate their disability. 29 C.F.R. § 1630.2(h) (App.). These examples are analogous to plaintiff's use of contact lenses. The uncontroverted evidence in the form of an evaluation by Dr. David Carlton, Optometrist, is that plaintiff's uncorrected vision is less than 20/800. Defendant's Exhibit G; Plaintiff's Exhibit 48. Without corrective lenses plaintiff would be severely limited in the major life activities of seeing, learning, caring for self, participation in community activities, and walking. *See* Plaintiff's Exhibit 48. For this reason, I am unable to conclude as a matter of law that plaintiff should not be considered disabled under the ADA and the Rehabilitation Act.[3]

 Defendant denies that plaintiff suffered an adverse employment decision since plaintiff was never rejected for the job of deputy sheriff but rather was never selected from the eligibility list. I find this argument to be unpersuasive. When defendant's eligibility list expired, and plaintiff was not hired, plaintiff suffered an adverse employment decision. *See Lowe v. City of Monrovia,* 775 F.2d 998, 1006 (9th Cir.1985).

 Finally, defendant argues that even if plaintiff's myopia is considered a disability and plaintiff has suffered an adverse employment decision, plaintiff has not shown that he suffered the adverse employment decision because of his disability. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 239–47, 109 S.Ct. 1775, 1784–89, 104 L.Ed.2d 268 (1989) (discussing the causation requirement in the context of 42 U.S.C. § 2000e which forbids an employer to make an adverse decision "because of [an] individual's . . . sex").

Defendant argues that plaintiff's responses to the Supplemental Application form which indicated that plaintiff suffered from a disability had no effect on the decision not to hire plaintiff as a deputy sheriff. Defendant produced the declaration of Sgt. Aaron Stewart to prove that Sgt. Stewart reviewed plaintiff's application, including the Supplemental Application, and determined that plaintiff met the minimum requirements for the position of deputy sheriff. This determination, according to Sgt. Stewart, was the only purpose of the application. Defendant's Exhibit A. Plaintiff was then interviewed for the position by a panel of three County of Marin employees, Mr. Gerry Norton, Ms. Julie Sobaszkiewicz, and Mr. Mark Ross. Defendant produces their declarations to prove that plaintiff's low ranking on the department eligibility lists resulted solely from plaintiff's performance in the interview. All three panel members declare that they asked all interviewees the same questions; they scored plaintiff, like all other applicants, entirely on the basis of his oral interview; they did not review any of the supplemental applications; and they did not ask any of the applicants questions related to vision. Defendant's Exhibits C, D, and E. The three

---

3. The underlying issue of the appropriate uncorrected vision standards for a deputy sheriff cannot be defined away. The ADA permits use of screening methods that tend to screen out a class of individuals with a disability if the screening method is job-related and consistent with business necessity. 42 U.S.C. § 12112(b)(6). Whether a deputy sheriff's position demands the unique qualification of uncorrected visual acuity is a fact specific question that is not before the Court.

interviewers rated plaintiff as generally "good" in the areas of preparation and recall, general knowledge of the law enforcement field, problem solving and decision making, and interpersonal relations; they rated plaintiff as "fair" in the area of communication; and they gave plaintiff overall interview scores of 79, 78, and 79. Plaintiff's Exhibits 27, 28, and 29. These scores averaged out to a final score of 79 which ranked plaintiff as applicant number 59 on defendant's eligibility list for Deputy Sheriff I—Lateral openings. Defendant's Exhibit F; Plaintiff's Exhibit 21. Plaintiff's rank was not reached in the hiring process.

In response, plaintiff contends that the interview process could have been rigged to prevent a disabled applicant like himself from scoring well. Plaintiff's contentions fall into four categories. First, plaintiff produces evidence that there were irregularities in defendant's hiring process insofar as defendant accepted applications from two other applicants after the stated deadline, interviewed both late applicants, and apparently hired one of them. Plaintiff's Exhibits 23, 24. Plaintiff argues that given this irregularity in defendant's hiring practice, defendant may have adopted other irregular practices with regard to his application. Even assuming that these irregularities violate the state laws governing defendant's hiring process, they do not provide affirmative evidence of discrimination based on plaintiff's vision and are therefore irrelevant. Second, plaintiff states that he was told by Sgt. Stewart and by the "female member" of the panel that the interview panel had reviewed his file. Plaintiff contends that this proves that the panel

knew of his disability. However, the information, if true, does not contradict the panel members' declarations that they did not read plaintiff's supplemental application and based their scores entirely on his oral interview. Third, plaintiff argues that his interview scores did not add up because the panel members ranked him in the "good" range in four out of five categories, but gave him overall "fair" rankings. This speculation about the nature of the scoring process does not accord with the interview sheets themselves which show that the panel's general scores for each category were not incorporated into the final interview score in a strict numeric manner. Plaintiff's Exhibits 27, 28, and 29. Fourth, plaintiff contends that statistical evidence shows that defendant had only one employee with less than 20/100 vision. Plaintiff's Exhibit 35, Response to Interrogatory No. 4, at 3. However, the statistics on which plaintiff cites are inconclusive; they do not show that defendant discriminated against visually disabled persons in general or against plaintiff in particular.[4] *Id.* In sum, plaintiff does not produce any admissible evidence to show a discriminatory reason for defendant's decision not to hire him.

To survive summary judgment, plaintiff must produce affirmative evidence in support of each element of the claims which he will be required to prove at trial. Defendant has produced evidence to show that there was no causal relation between plaintiff's disability and defendant's decision not to hire plaintiff. Plaintiff has produced no evidence to show that there was such a causal relation, to thereby create a genuine issue of material fact as regards this element of his claim.

---

**4.** Response to Interrogatory No. 4 states: "METS [defendant's medical record keeper] has records for 94 individuals hired by the Sheriff's Department. Of the 191 employed by the Marin County Sheriff's Department on May 17, 1995, 72 records were found. Of these 72 individuals, eight were tested either with glasses or corrective lenses, therefore, his/her [sic] uncorrected vision is not known. One other individual's vision was not tested at all. Thus, METS has uncorrected vision on 64 employees hired on May 17, 1995. Of these, one has uncorrected vision of 20/100 snellen. None have uncorrected vision worse than 20/100 snellen."

This statistical showing is too incomplete to help plaintiff avoid summary judgment. For ex-

ample, plaintiff does not provide information on the uncorrected vision of the eight employees who were tested with glasses or corrective lenses, let alone the entire department or the applicant pool. *See Mayor v. Educational Equality League,* 415 U.S. 605, 620–21, 94 S.Ct. 1323, 1333–34, 39 L.Ed.2d 630 (1974) (finding "simplistic percentage comparisons" to be "too fragmentary and speculative to support a serious challenge in a judicial proceeding"); *New York Transit Authority v. Beazer,* 440 U.S. 568, 582–86, 99 S.Ct. 1355, 1364–66, 59 L.Ed.2d 587 (1979) (scrutinizing the minimal relevance of weak statistical evidence to prove employment discrimination).

Therefore, defendant's motion for summary judgment is GRANTED with regard to plaintiff's claims under the ADA and the Rehabilitation Act.

 Plaintiff has also alleged under 42 U.S.C.1983 that defendant's policy and conduct constitute a violation of his constitutional rights. In order to prevail in a Section 1983 action a plaintiff must show that the conduct or policy complained of was committed by a person acting under color of state law and that the conduct deprived the plaintiff of a federal constitutional or statutory right. *Lewis v. Sacramento County,* 98 F.3d 434, 438 (9th Cir.1996). Plaintiff alleges that defendant's policies denied him Due Process under the Fourteenth Amendment. Since disabled persons do not constitute a suspect class for purposes of equal protection and due process analysis, the challenged conduct or policy will be upheld if it is rationally related to legitimate state goals. *Does v. Chandler,* 83 F.3d 1150, 1155 (9th Cir.1996) (*citing City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

 Defendant has not argued that its stated policy in the Deputy Sheriff I—Lateral Job Specification of not hiring applicants with worse than 20/100 vision is constitutionally permissible.[5] Since plaintiff cannot show that the alleged violation caused him not to be hired, he cannot obtain injunctive relief or recover compensatory or punitive damages. *Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977). He may, however, still be able to recover nominal damages. *Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Plaintiff's complaint, liberally construed, includes a claim for declaratory relief from defendant's alleg-

edly unlawful policy. Plaintiff's Amended Complaint, at 21. The Federal Declaratory Judgment Act provides the courts with the power to declare the rights and other legal relations of any interested party in a case of actual controversy whether or not further relief is or could be sought. 28 U.S.C. § 2201. Therefore, plaintiff may also be able to obtain declaratory relief. *Yniguez v. Arizona,* 975 F.2d 646, 647 (9th Cir.1992).

Accordingly, defendant's motion for summary judgment is GRANTED, except to the extent that plaintiff seeks declaratory relief or nominal damages under Section 1983.

IT IS SO ORDERED.

---

5. This policy as well as Defendant's Supplemental Application form appear on their face to violate the ADA. A policy of not hiring disabled persons is prohibited unless the employer can show that the policy is job-related and based on business necessity. 42 U.S.C. §§ 12112(a), 12113(a). Furthermore, an employer is prohibited from making pre-employment inquiries of a job applicant to determine whether an applicant is an individual with a disability or to determine the nature or severity of an applicant's disability. 42 U.S.C. § 12112(d)(2)(A). Defendant's appli-

cation procedure seems to violate these provisions of the ADA and discriminate against visually impaired applicants. In oral argument, the parties agreed that defendant no longer uses the Supplemental Application Form. There is no evidence on the record that defendant has changed the Job Specification which defines Deputy Sheriff—Lateral minimal physical characteristics as visual acuity of not less than 20/70, or 20/70 to 20/100 if approved by defendant's Medical Division.