**Betsy Jolene FALLACARO, Plaintiff,**

v.

**Margaret RICHARDSON, Commissioner, and Internal Revenue Service, Defendants.**

**Civil Action No. 95–2232 (PLF).**

United States District Court, District of Columbia.

June 6, 1997.

Shannon J. Briglia, Heather C. Splan, Vienna, VA, for Plaintiff.

Julian A. Cook, III, Asst. U.S. Atty., Washington, DC, for Defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case raises the interesting issue of whether a person whose uncorrected vision is so impaired as to render her legally blind and yet who, with contact lenses, has 20/20 vision, is disabled under the Rehabilitation Act. Plaintiff, who is currently employed as a Revenue Officer with the Internal Revenue Service, was denied a promotion to the job of Special Agent because of her uncorrected eyesight. She brings this action against the IRS under the Rehabilitation Act, 29 U.S.C. § 701 et seq.[1]

## I. BACKGROUND

The following facts are undisputed. Ms. Fallacaro applied for the job of Special Agent, a species of criminal investigator, and was placed on the Best Qualified List ("BQL"). Defs.' Response to Pl.'s Statement of Fact ¶ 5. Plaintiff's uncorrected vision is 20/600 in both eyes. See Letter from Gary Kjome, O.D. (July 31, 1993), Pl.'s Cross Mot., Ex. A at 45. She wears contact lenses which correct her vision to 20/20. The uncorrected vision requirement for a Special Agent is 20/200, and the corrected vision requirement is 20/20 in one eye and 20/30 in the other eye. See U.S. Office of Personnel Qualifications Standards Handbook at IV–B–227 (July 1993), Pl.'s Cross Mot., Ex. B.

In August 1993, the IRS learned that plaintiff's uncorrected vision did not meet the agency's requirements. Another individual was offered the position of Special Agent which he declined.[2] The position was reannounced and "plaintiff was not considered [for it], on account of safety concerns, given her uncorrected vision status which thus rendered her otherwise unqualified for the position." Defs.' Statement of Undisputed Fact

¶ 9. On August 31, 1993, plaintiff filed a request for a waiver of the uncorrected vision standard which was denied on April 28, 1994. Pl.'s Statement of Undisputed Fact ¶ 11; Defs.' Response to Pl.'s Statement of Undisputed Fact ¶ 11; Declaration of Darlene R. Berthod ("Berthod Decl.") ¶ 8–9 (Apr. 4, 1996). Nearly two years later, the IRS revisited the waiver issue, met with plaintiff, but ultimately denied her request for a waiver. See Berthod Decl. ¶¶ 11–13; Memo for File, attachment to Declaration of Melanie Willford ("Willford Decl.") (Mar. 29, 1996) (reflecting notes taken at May 16, 1995 meeting).

There is a factual dispute over the nature of the denial of plaintiff's waiver request. Plaintiff characterizes the IRS as having a blanket "no waiver" policy, while defendants contend that the IRS made an individualized determination that plaintiff was unqualified based on safety concerns because of her vision. Defendants admit that plaintiff continues to be denied consideration for a position as Special Agent because her vision does not meet the Service's uncorrected vision standard. Pl.'s Statement of Fact ¶ 12; Defs.' Response to Pl.'s Statement of Fact ¶ 12. The IRS also states that it "considers plaintiff medically ineligible" for the job although not "handicapped." Defs.' Mot. to Dismiss at 3 n. 2.

Defendants have moved to dismiss, arguing that the Court lacks subject matter jurisdiction because plaintiffs vision is completely correctable and she therefore is not a "handicapped individual" within the meaning of the Rehabilitation Act. Defendants also argue that the IRS did not regard plaintiff as handicapped. Plaintiff has moved for partial summary judgment on all issues except damages.

## II. THE REHABILITATION ACT

The Rehabilitation Act provides that "[n]o otherwise qualified individual ... shall solely by reason of his [or her] handicap, be exclud-

---

1. Since all of plaintiff's arguments rely on the Rehabilitation Act, her citation to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., appears to be superfluous.

2. The parties dispute the reasons for plaintiff's nonselection the first time: defendants assert

that she was not chosen because she was not the best qualified candidate, while plaintiff suggests that defendants already knew that her vision did not meet their requirement and that this played a role.

ed from the participation in, be· denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive agency. . . ." 29 U.S.C. § 794(a). The Act defines an "individual with a disability" as:

> any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B).[3] "Major life activities" are defined by regulation as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §§ 1613.702(c), 1630.2(i).

■ In order to establish a *prima* facie case of discrimination under the Act, a plaintiff must show (1) that plaintiff is an individual with a disability within the meaning of the Act, (2) that plaintiff is otherwise qualified for the job, and (3) that plaintiff was adversely treated or denied the benefits of her position solely because of her handicap. *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). The inquiry into whether a person is disabled is an individualized one and must be determined on a case-by-case basis. *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986).

In order to qualify as a person with a disability, plaintiff must show both that she is "impaired" and that the impairment "substantially limits a major life activity." At the risk of belaboring the obvious, not all impairments are substantially limiting. EEOC regulations state that "many impairments do not impact an individual's life to the degree that they constitute disabling impairments." 29 C.F.R. pt. 1630 App. § 1630.2(j). Further-

more, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); see *Hamm v. Runyon*, 51 F.3d 721, 726 (7th Cir.1995); *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718, 723 (2d Cir.1994) ("An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one," so that an employee with asthma who was discharged because she could no longer work in the basement was not disabled), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).[4]

The line between an "impairment" and a "disability" is not always easy to draw, but courts have generally found that the statutory insistence that a "major life activity" be "substantially impaired" excludes from the coverage of the Act those impairments that do not actually alter a person's general quality of life or ability to function. This is so even though the impairment may have led to a discrete adverse employment consequence. In an oft-cited opinion, the Fourth Circuit described the Rehabilitation Act as providing protection for those who suffer from severe disabilities and not commonplace or minor impairments:

> The Rehabilitation Act assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in

---

**3.** The Rehabilitation Act was amended to substitute the term "individual with a disability" for the older and now disfavored term "individual with a handicap."

**4.** While the cited regulations technically implement the ADA, they are relevant because the Rehabilitation Act as amended states:

The standards used to determine whether this section has been violated in a complaint alleg-

ing employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 *et seq.*) and the provisions of sections 501 through 504, and 510, of the [ADA] . . . as such sections relate to employment.

*29* U.S.C. § 794(d).

his or her search for satisfactory employment.

*Forrisi v. Bowen,* 794 F.2d at 934 (applicant with fear of heights was not disabled under the Act). Similarly, in *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985), the court found that a discharged employee with crossed eyes was not disabled under the Act because he failed to demonstrate that his condition affected his life activities, even though he was fired because he experienced eye strain in his particular assignment.

### A. Is Plaintiff an Individual with a Disability?

Several courts have held that individuals who have impaired but correctable eyesight are not individuals with a disability under the Rehabilitation Act, although at least one court came to this conclusion based in part on the nature of the job sought. *See Chandler v. City of Dallas,* 2 F.3d at 1390 (as a matter of law "a person is not handicapped if his vision can be corrected to 20/200"); *Joyce v. Suffolk County,* 911 F.Supp. 92, 94–98 (E.D.N.Y.1996) (the job of police officer has "unique qualifications" and plaintiff's uncorrected impaired eyesight disqualified him for police work but did not constitute a substantial limitation of a major life activity); *Walker v. Aberdeen–Monroe County Hospital,* 838 F.Supp. 285, 287–88 (N.D.Miss.1993) (former ambulance driver with visual impairment who nonetheless performed normally and had unrestricted physical activities was not substantially limited because the only thing he could not do was drive); *Trembczsynski v. City of Calumet City,* 1987 WL 16604 (N.D.Ill.1987) (reserve police who were denied promotion to full-time officers were not individuals with disabilities because their impaired vision did not substantially impair their ability to work and the City did not perceive them as generally unable to work).

More recently, a number of district courts have concluded that impaired but correctable eyesight may be a disability. *See Wilson v. Pennsylvania State Police Dep't,* 964 F.Supp. 898 (E.D.Pa.1997); *Peacock v. County of Marin,* 953 F.Supp. 306, 309 (N.D.Cal. 1997); *Sicard v. City of Sioux City,* 950 F.Supp. 1420, 1430–38 (N.D.Iowa 1996). Each of these courts relies on the EEOC's interpretation of its regulations, which explains that the existence of an impairment is a matter to be determined "without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. pt. 1630 App. § 1630.2(h). Furthermore, "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. pt. 1630 App. § 1630.2(j). For example, according to the EEOC's interpretation, "an individual with hearing loss would be considered to have an impairment even if the condition was correctable through the use of a hearing aid." 29 C.F.R. pt. 1630 App. § 1630.2(h).

■ The Eleventh Circuit has explained in some detail that the EEOC's interpretation is consistent with the ADA's legislative history and that an individual's disability therefore must be assessed without regard to mitigating measures, whether the mitigating measure is a prosthetic device, a hearing aid, medication, or, in a case like this one, contact lenses or eyeglasses. *See Harris v. H & W Contracting Co.,* 102 F.3d 516, 520–21 (11th Cir.1996) (plaintiff's thyroid condition must be assessed without taking into account the fact that it was completely controlled by medication). Other courts of appeals agree. See *Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.1996) (courts shall not consider mitigating measures when determining whether an individual is disabled under the ADA); *Roth v. Lutheran General Hospital,* 57 F.3d 1446, 1454 (7th Cir.1995) (same). Under this interpretation, plaintiff's disability must be measured without considering the benefit of her contact lenses, in which case she clearly is both impaired and disabled.

■ Because the EEOC is not authorized to promulgate rules and regulations implementing the ADA or the Rehabilitation Act, "the level of deference afforded [its interpretations of these Acts] will depend on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with

earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 257, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1990) (quoting *General Electric Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976)); *see Trans Union Corp. v. FTC*, 81 F.3d 228, 230 (D.C.Cir.1996); *Greenlees v. Eidenmuller Enterprises, Inc.*, 32 F.3d 197, 199 (5th Cir.1994); *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1555 (9th Cir.1992). *But see Harris v. H & W Contracting Co.*, 102 F.3d at 521 (citing *Chevron, U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) for the proposition that the EEOC's interpretation is entitled to deference if it is a reasonable interpretation of the statute). The EEOC's "no mitigating measures" rule is contained in an interpretive guideline and not in a regulation subject to the rigors of the notice and comment process. For this reason, several district courts have rejected the EEOC's guideline and concluded that disabilities are to be assessed by taking mitigating measures into account. *See, e.g., Moore v. City of Overland Park*, 950 F.Supp. 1081, 1088 (D.Kan.1996) (rejecting the EEOC interpretive guideline contained in 29 C.F.R. pt. 1630 App. § 1630.2(j) with respect to diabetes); *Schluter v. Industrial Coils, Inc.*, 928 F.Supp. 1437, 1445 (W.D.Wis.1996) (insulin-dependent diabetic who could control her condition with medication was not disabled).

■ This Court finds that the EEOC's "no mitigating measures" interpretation is eminently reasonable, consistent with the language and purposes of the Rehabilitation Act, and supported by the legislative history of the ADA. *See* H.R. REP. No. 101–485(II), 101st Cong., 2d Sess., at 52 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 303, 334; H.R. REP. No. 101–485(III), 101st Cong., 2d Sess., at 28–29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445; *Harris v. H & W Contracting Co.*, 102 F.3d at 521 ("[T]he inter-

pretation of [the ADA] contained in [29 C.F.R. pt. 1630 App. § 1630.2(j) ] is firmly rooted in the ADA's legislative history."); *Sicard v. City of Sioux City*, 950 F.Supp. at 1435–38 (same). Individuals who need wheelchairs, artificial limbs, hearing aids and other prosthetic devices clearly have impairments that may substantially limit their major life activities. Neither as a matter of law nor of common sense would we say that they are not impaired or disabled because their prosthetic device happens to be exceptionally good. The EEOC's "no mitigating measures" interpretation embodies the sensible position that the use of a prosthetic aid or medication does not eliminate the underlying disability although it may, as a practical matter, reduce or even eliminate its effects.

The wisdom of this view is underscored by the facts of this case. Defendants argue that plaintiff is not entitled to the protection of the Rehabilitation Act precisely because her condition is so easily correctable that she is neither impaired nor substantially limited in a major life activity. At the same time, the IRS refuses even to consider plaintiff for the position she seeks because of her failure to satisfy its regulation setting a threshold level of acceptable uncorrected vision. The very fact that the IRS has a requirement for uncorrected as well as for corrected vision recognizes that the availability of corrective eyewear does not make a visual disability irrelevant.

■ It makes little sense to deprive an entire class of disabled individuals—the legally blind who have correctable vision—of the protections of the Act merely because it is so easy to accommodate their disability. This Court adopts the EEOC's interpretation of the Rehabilitation Act and concludes that individuals who are legally blind are not rendered nondisabled as a matter of law merely because corrective eyewear technology can substantially or even completely correct their vision.[5]

---

5. Defendants argue that plaintiff is not disabled because she was only disqualified for the very specific job of Special Agent. It is true that the inability to perform a single, particular job does not constitute a substantial limitation in the ma-

jor life activity of working. *See Heilweil v. Mount Sinai Hospital*, 32 F.3d at 723; *Hamm v. Runyon*, 51 F.3d at 726, 29 C.F.R. pt. 1630 App. § 1630.2(j). Since plaintiff is disabled on other grounds, however, in that she is substantially

■ Although plaintiff is disabled within the meaning of the Rehabilitation Act and defendants admit that she continues to be denied consideration for a position as Special Agent because her vision does not meet the IRS' uncorrected vision standard, Pl.'s Statement of Fact ¶ 12; Defs.' Response to Pl.'s Statement of Fact ¶ 12, she is not entitled to summary judgment on the issue of liability because there are genuine issues of disputed fact as to whether she was "otherwise qualified" for the position. A candidate is otherwise qualified if she is "able to meet all of a program's requirements in spite of [her] handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). EEOC regulations define a "qualified individual with a handicap" as:

> an individual with handicaps who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others and who ... [m]eets the experience or education requirements ... of the position in question....

29 C.F.R. § 1614.203(a)(6).

■ Where, as here, "the employer relies on plaintiff's handicap as the reason for an adverse employment decision, then its burden is to rebut the inference that the handicap was improperly taken into account by going forward with evidence that the handicap is relevant to qualifications for the position. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that she is qualified despite her handicap." *Heilweil v. Mount Sinai Hospital*, 32 F.3d at 722. On the other hand, defendants have not established beyond factual dispute that the uncorrected vision standard is a legitimate physical job requirement. Plaintiff's qualification for the job of Special Agent therefore is a factual determination not susceptible to resolution as a matter of law on this record.

**B.  Did the IRS Regard Plaintiff as Having a Disability?**

■ Under federal law, the test for being "regarded" as having a disability mirrors the test for actually having one. An employer will be found to have regarded an employee as handicapped where the employer perceives or treats its employee as substantially impaired in a major life activity. *See Andrews v. State of Ohio*, 104 F.3d 803, 809–10 (6th Cir.1997); *Daley v. Koch*, 892 F.2d 212, 215–16 (2d Cir.1989). This category includes persons who have an impairment that substantially limits a major life activity "only as a result of the attitudes of others toward such impairment." 29 C.F.R. § 1630.2(*l*)(2). In order to show that the IRS regarded her as disabled, plaintiff must demonstrate not only that her employer thought her unqualified to be a Special Agent but also that the IRS considered plaintiff's vision "to foreclose generally the type of employment involved." *Chandler v. City of Dallas*, 2 F.3d at 1392; *see Forrisi v. Bowen*, 794 F.2d at 934–35.

■ There is a vast difference between plaintiff's current position and that of a Special Agent, the position to which she aspires. A Special Agent is not simply another sort of IRS employee but rather a criminal law enforcement officer, with the power and responsibility to investigate crimes, execute search and arrest warrants, carry firearms and make arrests. *See* 26 U.S.C. § 7608. If it is the IRS's position that plaintiff is automatically disqualified from such a position and that no accommodation can be made, then it may be concluded that it "regards" plaintiff as having a disability under the Rehabilitation Act. *Cf. Runnebaum v. Nations-Bank of Maryland*, 95 F.3d 1285, 1290 (4th Cir.1996) (plaintiff had raised a genuine issue of material fact about whether he was being perceived as having a substantially limiting impairment where his supervisor admitted that he felt panicky and uncontrolled upon learning that plaintiff was HIV-positive).

limited in the major life activity of seeing, she is entitled to the protections of the Rehabilitation Act. *See* 29 C.F.R. pt. 1630 App. § 1630.2(j) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working. For example, if an individual is blind ... there is no need to determine whether the individual is also substantially limited in the major life activity of working.").

■ The bare fact that plaintiff did not get the job of Special Agent is not enough, however, to establish that she was regarded as disabled. "[R]efusal to hire someone for a single job does not in and of itself constitute perceiving the plaintiff as a handicapped individual." *Tudyman v. United Airlines,* 608 F.Supp. 739, 746 (C.D.Cal.1984), *quoted in Andrews v. Ohio,* 104 F.3d at 809 *and Daley v. Koch,* 892 F.2d at 215. *See also Jasany v. United States Postal Service,* 755 F.2d at 1250 ("[An employer] is not required to accommodate [plaintiff] by eliminating one of the essential functions of his job."). Under this formulation, it is possible that defendants may have additional legal and factual arguments that shed light on whether the IRS actually regarded, perceived or treated plaintiff as being disabled. At this stage, however, there are genuine issues of material fact that preclude entry of judgment for plaintiff on this issue.

### C. Waiver

■ Finally, plaintiff argues that defendants violated 5 C.F.R. § 339.204 which provides that:

Agencies must waive a medical standard or physical requirement established under this part when there is sufficient evidence that an applicant or employee, with or without reasonable accommodation, can perform the essential duties of the position without endangering the health and safety of the individual or others.

5 C.F.R. § 339.204. This section is part of a larger regulatory scheme governing medical qualifications promulgated by federal agencies for the civil service. Among other things, the regulations provide guidance for agency compliance with EEOC regulations, and the section in dispute was designed to ensure that civil service medical qualifications do not run afoul of the Rehabilitation Act. *See* 5 C.F.R. § 339.103. The waiver provision, however, appears to be even more accommodating of impairments than the Rehabilitation Act is. It does not demand a finding of disability at all but rather requires that the agency make an actual comparison between the job requirements and an employee's ability to perform the job. On this record, it is not clear whether the IRS did so.

■ The Court concludes that neither party can prevail on the waiver issue at this stage. On the one hand, defendants have not shown as a matter of law that the IRS complied with 5 C.F.R. § 339.204. The fact that defendants disputed whether plaintiff was disabled as a matter of law did not relieve the IRS from assessing whether a waiver was warranted. Moreover, at the time of plaintiff's initial request, Ms. Berthod, who was the Director of the Human Resources Division at the time, simply denied the waiver and the defendants present no evidence that she made any findings whatsoever. *See* Berthod Decl. ¶¶ 4–8; Memorandum from Darlene Berthod to James Keith, Regional Personnel Officer (Apr. 28, 1994) (disapproving plaintiff's waiver request because "Ms. Fallacaro's vision is below the standard for legal blindness"), Pl.'s Cross Mot., Ex. F at 4.

On the other hand, there are outstanding factual issues that preclude entry of judgment for plaintiff at this time. The IRS held a second meeting between Ms. Berthod and Donald Vogel, Assistant Commissioner for Criminal Investigation, on May 16, 1995 where plaintiff's waiver request was discussed at some length. *See* Berthod Decl. ¶¶ 11–13; Willford Decl. ¶ 4 and Attachment; Declaration of Donald K. Vogel ¶¶ 9–11 (Apr. 3, 1996). Whether the discussions at this meeting about plaintiff's waiver met the requirements of 5 C.F.R. § 339.204 is a matter of genuine dispute.

An Order consistent with this Opinion shall be entered this same day.

SO ORDERED.

### ORDER

This case is before the Court on defendants' motion to dismiss and plaintiff's motion for partial summary judgment. For the reasons stated in the accompanying Opinion issued this same day it is hereby

ORDERED that defendants' motion to dismiss is DENIED; it is

FURTHER ORDERED that plaintiff's motion for partial summary judgment is DENIED; and it is

FURTHER ORDERED that a status conference is scheduled for June 23, 1997, at 9:30 a.m.

SO ORDERED.