Robert DENSON, Plaintiff,

v.

**VILLAGE OF BRIDGEVIEW, d/b/a Village of Bridgeview Fire Department, Defendant.**

**No. 96 C 5819.**

United States District Court, N.D. Illinois, Eastern Division.

Aug. 24, 1998.

---

Katherine M. Anthony, Chicago, IL for Plaintiff.

Heather Renee Sloan, Michael G. Cainkar, Louis F. Cainkar, Ltd., Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Robert Denson ("Denson") brings this action against the Village of Bridgeview ("the Village"). Denson alleges that the Village violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), by refusing to hire him because of his alleged disability. Both the Village and Denson move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure solely on the issue of whether Denson is disabled within the meaning of the ADA. For the reasons set forth below, the court grants

Denson's motion for summary judgment and denies the Village's motion for summary judgment.

## Background

The following facts are uncontested. Denson applied for the position of firefighter with the Village in September 1990. The hiring process was conducted by the Village's Board of Fire and Police Commissioners ("the Board"). In April, 1993, Denson learned that he would be the next firefighter the Village hired on the condition that he passed routine medical examinations. (Pl.12(m) ¶¶ 2–3). On April 27, the Village informed Denson by letter that he had unsuccessfully completed the testing process and that the Village had stricken his name from the list of eligible firefighter candidates. (Def.12(m) ¶ 9). The Village refused to hire Denson as a firefighter because Denson's uncorrected vision did not meet the minimum standards promulgated by the Board's Rules and Regulations, which required that all entry-level firefighters have a minimum of 20/60 uncorrected vision, correctable to 20/25 vision. (Def.12(m) ¶¶ 8, 11). The ophthalmologist's visual examination revealed that Denson was nearsighted with 20/400 uncorrected vision in both eyes. (Def.12(m) ¶ 6).

Denson has worn soft contact lenses for over fourteen years, and with these corrective lenses, his vision is 20/20 or better in both eyes. (Denson Aff. ¶ 6). When he wears eyeglasses or contact lenses, Denson can perform manual tasks such as walking, seeing, speaking, learning, and working without limitation or restriction. (Def.12(m) ¶ 12). However, without glasses or contact lenses, Denson cannot drive, read, use a computer, walk in unfamiliar places, or discern people's faces. (Pl.12(m) ¶¶ 2–3). Denson has been employed by Control Engineering Supply Company, a heating and air-conditioning wholesaler since 1975. During his tenure of employment at Control Engineering Supply Company, Denson's corrected vision has never affected his ability to perform any of his job duties. (Def.12(m) ¶ 16).

## Analysis

Both parties now seek summary judgment in their favor on the issue of whether Den-

son's visual impairment constitutes a disability under the ADA. Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The court will not render summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies this burden, the non-movant must then set forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is appropriate. *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257 (7th Cir.1993) (citations omitted).

## I. Procedural Issues

Before moving to the substantive issues presented by this case, the court must resolve two procedural arguments raised by the Village. The Village first argues that the court should dismiss this case because Denson sued only the Village and not the Board as the defendant in this lawsuit. Under Illinois law, it is the Board, and not the Village, that holds the authority to hire firefighters in the Village of Bridgeview. Thus, according to the Village, the court should dismiss this case because the only defendant in the lawsuit (the Village) did not participate in the decision to reject Denson's job application based on his vision. In response to this argument, Denson filed a motion for leave to add the Board as a defendant in this action. Denson concedes that the Village is not the appropriate defendant in this litigation; however, Denson argues that the court should

substitute the Board as the appropriate defendant under Rule 21 of the Federal Rules of Civil Procedure. The Village, however, insists that Denson cannot add the Board as a defendant because Denson failed to name the Board as a defendant in his EEOC charge.

■ If a party is not sued, but had adequate notice that it was subject to suit, then that party may be properly sued even though it was not named in an EEOC charge. *Harris v. Stallman Trucking Co.,* 951 F.Supp. 134, 135–136 (N.D.Ill.1997). In this case, the Board not only knew about Denson's discrimination allegation, but has played an active role in defending against Denson's claim. For example, the Board received correspondence from the EEOC about Denson's charge, sent correspondence to the EEOC, and received a copy of the EEOC's final determination regarding Denson's disability claim. (Pl.12(m) ¶ 10). These facts establish that the Board had adequate notice that it was subject to this employment discrimination lawsuit.

■ Under Rule 21 of the Federal Rules of Civil Procedure, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. This court finds that the Board may be properly added to the lawsuit because the Board knew that it was subject to suit by Denson. Because the Board conducts the examination process for applicants to its municipal fire department, and retains the sole authority to appoint sworn fire personnel without input from the governing body of the municipality, 65 ILCS 5/10–2.1–4, the Board is the proper defendant. Consequently, the Village of Bridgeview may be dropped from the lawsuit. The court therefore grants Denson's motion for leave to add the Board as a party defendant to this lawsuit and dismisses the Village from this action.[1]

■ The Village next argues that the court should dismiss Denson's claim that he suffers from an "actual disability" because Denson's EEOC charge did not include this allegation. Instead, in his EEOC charge, Denson only alleged that the Village discriminated against him because the Village "regarded" him as having a disability. The Village asserts that since Denson's EEOC charge only alleged that the Village "regarded" him as having a disability, Denson's complaint must be limited to this claim and may not include his claim that he has an "actual disability."

■ To bring a claim under the ADA, a plaintiff must first file a charge alleging the unlawful employment practice with the EEOC and receive notice of right to sue. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5(e)–(f)). As a general rule, a plaintiff cannot file claims in a court of law that were not included in the EEOC charge. *See, e.g., Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). However, an ADA plaintiff may bring a claim not included in the EEOC charge, "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claims in the complaint can reasonably be expected to grow out of an EEOC investigation." *Cheek,* 31 F.3d at 500. Furthermore, courts consistently apply a liberal reading of EEOC charges. *Roesel v. Joliet Wrought Washer Co.,* 596 F.2d 183, 187 (7th Cir.1979); *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167–69 (7th Cir.1976).

The court rejects the Village's argument and finds that Denson is not limited to his "regarded as" claim. Denson's actual impairment claim is reasonably related to his claim that the Village regarded him as disabled because both claims involve allegations of discrimination based on Denson's nearsightedness. The Village relies on *Maciejewicz v. Oak Park Pub. Library,* No. 95 C 7119, 1996 WL 501743 (N.D.Ill. Sept. 3, 1996) in support of its argument that Denson's claims are not reasonably related to one another. In *Maciejewicz,* the court found that claims of post-traumatic stress disorder and

---

**1.** To remain consistent with the parties' written memoranda, and to avoid any confusion throughout this opinion, the court will continue to refer to the defendant as "the Village" even though the only remaining defendant is the Board of Police and Fire Commissioners.

alcoholism were not reasonably related. However, Denson's case is clearly distinguishable. *Maciejewicz* involved claims of two entirely different underlying disabilities—post-traumatic stress disorder and alcoholism. In contrast, Denson's claims are both based on the same underlying disability—his nearsightedness. Because both of Denson's claims are based on the same physical disability, the court finds that they are reasonably related to one another.

## II. *Disability Under the ADA*

Having resolved the Village's procedural arguments, the court now turns to the substantive issue presented by this case. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees ..." 42 U.S.C. § 12112(a). Thus, to prevail on his ADA claim, Denson must show that (1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) the Village subjected him to an adverse employment decision because of his disability. *See McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 371 (6th Cir.1997); *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1123 (10th Cir.1995). For purposes of the summary judgment motions presently before the court, both parties focus solely on the first element of the ADA inquiry—namely, whether Denson's vision constitutes a "disability" as the ADA defines that term.

The ADA's three-part definition defines a "disability" as (1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2)(A), (B) & (C); *Vande Zande v. State of Wis. Dep't of Admin.,* 44 F.3d 538, 541 (7th Cir.1995). Denson alleges that the Village discriminated against him by refusing to hire him both because of his actual visual impairment which substantially limits his major life activities and because the Village

regarded him as having an impairment that substantially limits his major life activities.

Denson first alleges that his 20/400 vision constitutes an actual disability under the ADA because it substantially limits him in the major life activities of seeing and working. The Village maintains that Denson does not suffer from a disability because Denson's visual impairment does not substantially limit his ability to see or work when he wears corrective lenses. In short, the parties disagree over the legal issue of whether the ADA requires the court to consider the curative effects of corrective lenses when determining whether Denson's 20/400 vision constitutes a disability.

Courts addressing this same legal issue have reached opposite conclusions. *Compare Doane v. City of Omaha,* 115 F.3d 624 (8th Cir.1997); *Fallacaro v. Richardson,* 965 F.Supp. 87 (D.D.C.1997); *Wilson v. Pennsylvania State Police Dep't,* 964 F.Supp. 898 (E.D.Pa.1997); *Sicard v. City of Sioux City,* 950 F.Supp. 1420 (N.D.Iowa) (all holding that the determination of whether an individual with visual impairment is disabled under the ADA must be made without regard to corrective eyewear) *with Sutton v. United Air Lines,* 130 F.3d 893 (10th Cir.1997); *Chandler v. City of Dallas,* 2 F.3d 1385 (5th Cir.1993); *Joyce v. Suffolk Cty.,* 911 F.Supp. 92 (E.D.N.Y.1996) (all holding that courts should consider the effects of corrective lenses when determining whether an individual with visual impairment is disabled).

Notwithstanding this split in authority, the court's analysis was recently made easier by the Seventh Circuit which held that "[w]e determine whether a condition constitutes an impairment, and the extent to which the impairment limits an individual's major life activities, without regard to the availability of mitigating measures such as medicines, or assistive or prosthetic devices." *Baert v. Euclid Beverage, Ltd.,* 149 F.3d 626, 629 (7th Cir. 1998) (citations omitted). In view of this binding authority, the issue of whether Denson has an actual disability under the ADA becomes a relatively simple one.

██ To establish that he has an actual disability under the ADA, Denson must show

that he has "a physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). The Supreme Court has interpreted this provision of the ADA to require (1) that the plaintiff suffer from a physical or mental "impairment," (2) which "substantially limits," (3) a "major life activity." *Bragdon v. Abbott,* —— U.S. ——, ——————, 118 S.Ct. 2196, 2202–05, 141 L.Ed.2d 540 (1998); *Erjavac v. Holy Family Health Plus,* 13 F.Supp.2d 737, 742 (N.D.Ill. 1998). Whether a person is disabled requires the court to perform an individualized inquiry, determined on a case-by-case basis. *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995).

■ The Village does not contest that Denson's 20/400 vision constitutes a physical "impairment"; nor does the Village dispute that seeing and working are "major life activities." Rather, the Village maintains that Denson is not disabled under the ADA because his 20/400 vision does not "substantially limit" any of Denson's major life activities. (*See* Def. Mem. at 5–6). According to the Village, Denson's vision does not substantially limit his major life activities of seeing or working because Denson can perform both of these functions without any limitation simply by wearing corrective eyeglasses or contact lenses. As noted, the Seventh Circuit rejected this argument in *Baert* and so does this court. In light of the *Baert* decision, the court must determine whether Denson's uncorrected 20/400 vision indisputably constitutes a disability under the ADA.

EEOC regulations interpreting the ADA define the term "major life activities" to include "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means that the person is either unable to perform a major life function or is "significantly restricted as to the condition, manner, or duration" under which the individual can perform a particular major life function, as compared to the average person in the general population. 29 C.F.R. § 1630.2(j). Additionally, the EEOC regulations set forth the following factors that should be considered in determining whether an individual is substantially limited in a major life activity: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); *Hamm v. Runyon,* 51 F.3d 721, 725 (7th Cir.1995).

Denson asserts that without his corrective lenses, he is substantially limited in the major life activities of seeing and working. The regulations provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, a person claiming a substantial limitation in the major life activity of working must show that the impairment "significantly restrict[s] [his or her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i).

■ The undisputed facts before the court unequivocally demonstrate that Denson's 20/400 vision substantially limits him in the major life activities of seeing and working. Without his corrective lenses, Denson cannot drive, read, discern street signs or building numbers, distinguish peoples' faces, watch television or movies, or work on a computer. (Denson Aff. Par. 7). Denson's 20/400 vision is a permanent condition which completely prevents him from effectively performing any of these functions or seeing his immediate surroundings with a strong degree of clarity. Under these facts, it becomes clear that Denson's ability to see is significantly worse than that of an average person. Similarly, Denson's substantial visual impairment would preclude him from working in a broad category of jobs that individuals with average eyesight could perform.

In order to defeat summary judgment, the Village "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue

for trial." Fed.R.Civ.P. 56(e). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Village puts forth no evidence that without corrective lenses Denson is not substantially limited in the major life activities of seeing and working. For instance, the Village does not show facts which tend to prove that an individual with 20/400 vision can perform the specific functions Denson has shown that he cannot perform. Nor does the Village show proof of a wide class of jobs that Denson can perform with 20/400 vision. Accordingly, the undisputed facts establish that Denson is substantially limited in the major life activities of seeing and working. The court therefore grants Denson's motion for summary judgment and holds that his uncorrected 20/400 vision constitutes an actual disability under the ADA. The court does not hold that the Village is liable under the ADA, nor does this ruling preclude the Village from raising other defenses appropriate under the ADA. Instead, the court simply holds that Denson's visual impairment substantially limits him in the major life activities of seeing and working.

Denson and the Village also dispute whether the Village "regarded" Denson as disabled. *See* 42 U.S.C. § 12102(2)(C). Whether an individual is "actually disabled" or "regarded as disabled" are merely alternative methods by which to establish that the person has a "disability" under the ADA. *See* 42 U.S.C. § 12102(2)(A)-(C). Because the court has concluded that there is no genuine factual dispute over the issue of whether Denson has an actual disability, the court need not address the parties' arguments over whether the Village regarded Denson as disabled.

### Conclusion

For the reasons set forth above, the court grants Denson's motion for summary judgment and denies the Village's motion for summary judgment. The court also grants Denson's motion for leave to add the Board as a defendant and dismisses the Village as a defendant in this case. The parties should discuss settlement before the next court date.