Kevin J. GILDAY, Plaintiff,

v.

MECOSTA COUNTY, et al., Defendants.

No. 1:95–CV–86.

United States District Court,
W.D. Michigan,
Southern Division.

March 28, 1996.

Victor A. Zambardi, Sills, Law, Essad, Fiedler & Charboneau, P.C., Bloomfield Hills, MI, for plaintiff.

Bonnie G. Toskey, David G. Stoker, Cohl, Stoker & Toskey, P.C., Lansing, MI, for Mecosta County.

Frank A. Guido, Stephen P. Whitaker, Frank A. Guido Law Offices, Livonia, MI, for Firefighters Association of Michigan, Charles Smalley.

## OPINION

QUIST, District Judge.

Plaintiff, Kevin Gilday, brought this action against his former employer and his former union, alleging a violation of the Americans with Disabilities Act. This matter is before the Court on defendants Firefighters Association of Michigan and Charles Smalley's motion for summary judgment and defendants Mecosta County, James Martin and Daniel Farrow's motion to dismiss for failure to state a claim or, in the alternative, for summary judgment. This Court heard oral arguments on the pending motions on February 12, 1996.

### Facts

Plaintiff was hired by Mecosta County as an emergency medical technician on May 15, 1978. Mecosta County operates an emergency medical service/transport program from stations located in Big Rapids, Remus, and Barryton, Michigan. Plaintiff worked at the Big Rapids station. Emergency medical employees respond to dispatch calls with a fully-equipped ambulance and provide immediate medical treatment. Defendant James Martin is the Director of Mecosta County Emergency Medical Services. Defendant Firefighters Association of Michigan (FAOM) is a labor organization and is the exclusive bargaining agent for the Mecosta County paramedics.

Defendant Charles Smalley is the local FAOM union steward.

In September of 1991, plaintiff was diagnosed with diabetes mellitus. Diabetes is a chronic disorder involving abnormal insulin secretion. Plaintiff announced at a staff meeting that he was diabetic and that he would be taking oral medication and monitoring his blood sugar levels with a glucometer.

On March 1, 1994, plaintiff was demoted from base supervisor because of several complaints about his behavior. Defendants explain that this was not the first instance in which plaintiff's behavior was unacceptable and refer to the following account of plaintiff's employment history.

9–18–90 Counseling by Director McGrath regarding extremely rude behavior to family members of a transport.

5–8–91 Written counseling by Director McGrath regarding lack of cleanliness in living quarters.

12–12–91 Warning by Director McGrath regarding insubordinate conduct and setting a poor example as supervisor.

6–4–92 Counseling by Interim Director Farrow regarding backing ambulance into telephone pole.

8–11–92 Verbal Warning by Interim Director Farrow regarding failure to perform routine cleaning of ambulance.

10–15–92 Verbal Warning by Interim Director Farrow regarding negligent inspection of ambulance.

10–20–92 Verbal Warning by Interim Director Farrow regarding leaving ashtray full of cigarette butts and ashes in non-smoking area of living quarters.

12–9–92 Written Reprimand by Interim Director Farrow regarding repetitive failure to perform routine cleaning of ambulance and living quarters.

2–10–93 Counseling by Director Martin regarding inappropriate communication and demeanor with central dispatch/complainant John Koneska, Central Dispatch.

On August 17, 1994, plaintiff's employment was terminated because of behavior unbecoming a paramedic. Plaintiff attributes the conduct which led to his termination to symptoms associated with his diabetes.

On February 13, 1995, plaintiff filed a disability discrimination claim with the Michigan Department of Civil Rights (MDCR) and with the Equal Employment Opportunity Commission (EEOC). Plaintiff alleged a violation date of August 17, 1994. Plaintiff filed a complaint with this Court on February 10, 1995.[1] He amended his complaint on June 28, 1995.

Count I of plaintiff's amended complaint alleges that Mecosta County, Martin and Farrow discriminated against him in violation of the Americans with Disabilities Act. Count II alleges that the Firefighters Association and Smalley discriminated against him in violation of the Americans with Disabilities Act. Count III alleges Mecosta County, Martin and Farrow wrongfully discharged him, and the Firefighters Association and Smalley breached their duty of fair representation. Count IV alleges intentional infliction of emotional distress, Count V contains a count for retaliatory discharge and Count VI alleges conspiracy. At the oral argument, the parties agreed that this Court's jurisdiction is based solely upon the Americans with Disabilities claims.

### Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511.

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

The Americans With Disabilities Act, 42 U.S.C. §§ 12101–12213, (ADA) attempts to eliminate discrimination against individuals with disabilities. The Act provides in part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

---

1. Mr. Gilday's complaint alleged that a Notification of Right to Sue would be issued. Defendants argued that this Court has no jurisdiction because Mr. Gilday did not have a right to sue letter prior to initiating this lawsuit. At the oral argument, this Court indicated that the lack of a right to sue letter was a curable defect. "We hold that receipt of a right-to-sue notice is a condition precedent to a filing of a Title VII claim, curable after the action has commenced." *Jones v. American State Bank,* 857 F.2d 494, 499–500 (8th Cir.1988) (citations omitted). *See also, Burrus v. Allnet Communication Servs., Inc.,* 1995 WL 387590 (Conn.Super. June 26, 1995).

training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

■ In order to set forth a prima facie case of discriminatory discharge under the ADA, plaintiff must show that: (1) he had a "disability"; (2) he was a "qualified" individual; (3) his termination constituted an unlawful "discrimination" based on the disability. *Tyndall v. National Educ. Centers, Inc.*, 31 F.3d 209, 212 (4th Cir.1994).

The term "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

"Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.", 29 C.F.R. § 1630.2(i). For an impairment to "substantially limit" one or more of these major life activities, the individual must be unable to perform, or be significantly restricted in the ability to perform an activity compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1)(ii).

The ADA regulations provide that a court should consider the following factors when determining whether an impairment substantially limits a major life activity:

(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

In order to show that he is substantially limited in the major life activity of working, plaintiff must show that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

■ This Court finds that plaintiff is not disabled under the ADA. Applying the relevant definitions to the facts of this case, this Court concludes that plaintiff does not suffer from an impairment that substantially limits one or more of his major life activities.

When asked at his deposition how diabetes has impacted his activities, plaintiff responded that it alters his mood.

Q. Question, how has your diabetes substantially impacted your everyday life activities?

A. It alters my mood. It can cause frustration.

\* \* \* \* \* \*

Q. How does it alter your mood?

A. It can make me frustrated. It can raise my stress levels. It can cause anxiety. It can cause headaches. It can make me frustrated.

K. Gilday dep. at pp. 183–84. Plaintiff referred to a list of symptoms associated with diabetes that was printed in *Readers' Digest.* Plaintiff testified that he experienced these symptoms before he was diagnosed as a diabetic: "frequent urination, sexual dysfunction, weight loss, excessive thirst, excessive hunger, skin infections, throat infections, general body infections, low pulse, oximetry or percentage of oxygen in your blood, loss of feeling in the fingers, loss of feeling in the legs, blurred vision at times." K. Gilday dep. at pp. 184–85. However, upon further questioning, plaintiff testified:

Q. How has excessive urination impacted your ability to drive a vehicle, a motor vehicle?

A. I don't see a connection.

Q. Please answer it has not or it has. ·

A. On a two-hour trip, you'd have to stop. That's the only connection.

K. Gilday dep. at p. 186.

Q. Mr. Gilday, would it be a fair statement that your weight loss of 30 pounds has favorably impacted your everyday life activities?

A. Now? Yes.

K. Gilday dep. at p. 187.

Q. Mr. Gilday, how has excessive hunger impacted your everyday life activities post diagnosis and treatment?

A. Post diagnosis and treatment, I do not have excessive hunger.

K. Gilday dep. at p. 188.

Q. How has your diabetic condition, to the extent that it induces bodily infections, impacted your everyday life activities?

A. I believe when we first started, we talked about boils and throat infections. I still have those. I have infections.

*Id.*

Q. You've indicated that you have experienced blurred vision post diagnosis as a result of your diabetic condition. Is that accurate, or am I not accurate?

A. I think one of us goofed. Before. The only blurred vision I have now is because I have a wrong prescription glasses.

K. Gilday dep. at p. 190. Plaintiff was also asked specifically how his diabetes interfered with his daily activities. His responses reveal that his diabetic condition does not significantly restrict his daily routine.

Q. And does your diabetes—diabetic condition, diabetes, in any way impact your ability to drive?

A. I guess I'd have to ask for clarification. I don't believe so, no, to my knowledge.

Q. What clarification do you need?

MR. SNAVELY: I think he answered the question.

THE WITNESS: Yeah.

K. Gilday dep. at p. 80. Plaintiff's deposition continued:

Q. Does your diabetic condition in any respect interfere with your ability to dress yourself daily?

A. No, ma'am.

Q. Does it interfere in any respect with your ability to transport yourself to desired destinations?

A. Not at this time, no, ma'am.

Q. Does it interfere in any respect with your ability to grocery shop, prepare certain foods, and feed yourself?

A. As long as the food's that I can have, no, ma'am, not at this time.

K. Gilday dep. at p. 195–96.

This Court finds that plaintiff is not substantially limited in the major life activity of working. Nor is plaintiff substantially limited in any of the other major life activities. Plaintiff's diabetic condition does not prevent him from caring for himself, performing manual tasks, learning or performing any of the other major life activities. Despite his assertions, the record does not support a conclusion that plaintiff's condition significantly restricts his activities.[2]

Accordingly, summary judgment is appropriate with respect to plaintiff's ADA claims. Plaintiff is unable to establish that he has a disability, as that term is defined under the ADA. Counts I and II of plaintiff's complaint will be dismissed. These are the only claims over which this Court has original jurisdiction. The remaining claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) and (d). An Order consistent with this Opinion will be entered.

---

**2.** Plaintiff neither has a record of having an impairment which substantially limits a major life activity nor was he regarded as having such an impairment.