**Kevin J. GILDAY, Plaintiff–Appellant,**

v.

**MECOSTA COUNTY, et al.,**
**Defendants–Appellees.**

No. 96–1571.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1997.

Decided Sept. 2, 1997.

As modified on Denial of Rehearing and
Rehearing En Banc Oct. 30, 1997.

Kennedy, J., filed opinion concurring in part and dissenting in part and was joined in part by Guy, J.

Guy, J., filed opinion concurring in part and dissenting in part.

---

Victor A. Zambardi (briefed), Brent A. Snavely (argued), Sills, Law, Essad, Fiedler & Charboneau, Bloomfield Hills, MI, for Plaintiff–Appellant.

Bonnie G. Toskey, (argued and briefed), Cohl, Stoker & Toskey, Lansing, MI, for Defendant–Appellee Mecosta County.

Martha M. Champine, (argued and briefed), Frank A. Guido (briefed), Peter W. Cravens, Livonia, MI, for Defendants–Appellees Firefighters Association of Michigan, James Martin, Daniel Farrow, Charles Smalley.

Before: KENNEDY, GUY, and MOORE, Circuit Judges.

MOORE, J., announced the judgment of the court and delivered the opinion of the court except as to Part III A 1. KENNEDY, J. (pp. 766–768), delivered a separate opinion concurring in part and dissenting in part in which RALPH B. GUY, Jr., J., joined, with RALPH B. GUY, Jr., J. (p. 768), also delivering a separate opinion concurring in part and dissenting in part. The opinion of the Judge Kennedy is the opinion of the court with respect to the issues discussed in Part III A 1 of Judge Moore's opinion.

## OPINION

MOORE, Circuit Judge.

In its present posture, this case presents us with the narrow question of whether Plaintiff–Appellant Kevin J. Gilday presented sufficient evidence that he is a "qualified individual with a disability" under the Americans with Disabilities Act (ADA) to withstand a motion for summary judgment. *See* 42 U.S.C. § 12112(a). The district court held that Gilday had failed to present such evidence, and it granted defendants' motion for summary judgment. *See Gilday v. Mecosta*

*County,* 920 F.Supp. 792, 796 (W.D.Mich. 1996). We reverse.

## I. FACTS

Gilday worked for Defendant–Appellee Mecosta County, Michigan, as an emergency medical technician from 1978 until he was fired in August 1994 for conduct unbecoming a paramedic and a history of rudeness to patients and colleagues. *Id.* at 793. In September 1991 Gilday was diagnosed with non-insulin-dependent diabetes mellitus, which required that Gilday take oral medication, monitor his blood-sugar levels, and follow what he characterizes as a strict diet and exercise regimen. *Id.;* Joint Appendix (J.A.) at 1450–51, 1119–21, 1148–49. Stress can also apparently cause his blood sugar to fluctuate wildly. J.A. at 1160–63, 1321–22. Gilday testified that if he departs from this regimen his blood sugar deviates from normal and he becomes frustrated and irritable. J.A. at 1250, 1320, 1424–25. Before he brought the condition under control he suffered a variety of other adverse symptoms. J.A. at 1112–13, 1413–14.

Gilday brought suit against Mecosta County, his union (Firefighters Association of Michigan), and individual officers of both entities under the ADA and various state-law causes of action. *See* J.A. at 25–41 (Amended Complaint). The essence of Gilday's theory of recovery under the ADA is that his diabetes constitutes a disability and that his employer should have granted his request for the reasonable accommodation of transferring him to a less chaotic station, which would have allowed Gilday to maintain the regimen that controls his diabetes. He argues that if he had been accommodated he would not have engaged in the rude conduct that led to his termination. The district court held that his diabetes did not significantly limit a major life activity and was therefore not a disability, granted summary judgment in favor of defendants under the ADA, and dismissed Gilday's state-law claims without prejudice. *See* 920 F.Supp. at 796.

## II. JURISDICTION

The ADA incorporates many of the procedures and remedies of Title VII of the Civil

Rights Act, including the provision in 42 U.S.C. § 2000e–5(f)(1) that requires a plaintiff to obtain a "right-to-sue" letter before filing suit. *See* 42 U.S.C. § 12117(a). Gilday did not receive his letter until after he had filed suit. *See* 920 F.Supp. at 794 n. 1. The district court held that Gilday's eventual receipt of a right-to-sue letter cured this defect. *See id.* (citing *Jones v. American State Bank,* 857 F.2d 494, 499–500 (8th Cir.1988)). *Cf. Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1487–88 (6th Cir.1989) (discussing, but not deciding, issue). The defendants have not raised this issue on appeal, and we therefore need not decide it. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982) (holding that right-to-sue letter requirement is not jurisdictional and is therefore subject to waiver).

We have jurisdiction over Gilday's timely appeal under 28 U.S.C. § 1291.

### III. DISCUSSION

■ "A person seeking relief under the ADA for termination must establish (1) that she is a disabled person within the meaning of the Act, (2) that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment decision because of her disability." *McKay v. Toyota Motor Mfg., U.S.A., Inc.,* 110 F.3d 369, 371 (6th Cir.1997) (citation omitted). This appeal concerns only the first two of these elements. A district court may grant summary judgment only when there is no dispute as to any material question of fact and one party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). *See Hankins v. The Gap, Inc.,* 84 F.3d 797, 800 (6th Cir.1996). We review de novo a grant of summary judgment. *Id.*

### A. Whether Gilday's Diabetes Constitutes a Disability Under the ADA

The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more of the major life activities of [the affected] individual." 42 U.S.C. § 12102(2)(A). The parties agree that Gilday's diabetes mellitus constitutes an impairment. *See* Brief of Appellees Mecosta County et al. at 16–17. *Cf.* 29 C.F.R. § 1630.2(h)(1) (defining impairment). The defendants, however, argue that this impairment is not a disability because it does not substantially limit any of Gilday's major life activities.

### 1. Whether the Court Should Take the Presence of Mitigating Measures into Account When Deciding Whether a Disability Exists

In holding that Gilday is not disabled, the district court focused exclusively on how the diabetes impacted on Gilday's life after he had been diagnosed with the condition and had controlled it with medication and proper rest and eating habits. *See* 920 F.Supp. at 795–96. Under this court's recent decision in *McKay,* the district court's holding that Gilday's diabetes, when properly treated and controlled, does not substantially impair his ability to work or any other major life activity is correct. *See McKay,* 110 F.3d at 373.

The EEOC's interpretive guidelines, however, state that "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. § 1630 App. 1630.2(j). *See also id.* § 1630.2(h). The first question that we must address, then, is whether, in determining whether a person is disabled under the ADA, a court should look at the situation when the impairment is controlled by medication or treatment or, as the EEOC suggests, the court should evaluate the impairment without regard to the availability of such mitigating measures. The courts are divided on the question. *Compare Doane v. City of Omaha,* 115 F.3d 624, 627 (8th Cir.1997); *Harris v. H & W Contracting Co.,* 102 F.3d 516, 520–21 (11th Cir.1996); *Fallacaro v. Richardson,* 965 F.Supp. 87, 93–94 (D.D.C.1997); *Wilson v. Pennsylvania State Police Dep't,* 964 F.Supp. 898, 907 (E.D.Pa.1997); *Hendler v. Intelecom USA, Inc.,* 963 F.Supp. 200, 206 (E.D.N.Y.1997); *Shiflett v. GE Fanuc Automation Corp.,* 960 F.Supp. 1022, 1029 (W.D.Va.1997); *Sicard v. City of Sioux City,*

950 F.Supp. 1420, 1438–39 (N.D.Iowa 1996) (all explicitly adopting EEOC interpretation over direct challenges), *and Holihan v. Lucky Stores, Inc.,* 87 F.3d 362, 366 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1349, 137 L.Ed.2d 506 (1997); *Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446, 1454 (7th Cir.1995); *Thomas v. Davidson Academy,* 846 F.Supp. 611, 617 (M.D.Tenn.1994) (all using EEOC interpretation without substantial analysis), *with Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 191 & n. 3 (5th Cir.1996) (dicta suggesting disagreement with EEOC view); *Schluter v. Industrial Coils, Inc.,* 928 F.Supp. 1437, 1445 (W.D.Wis. 1996) ("If an insulin-dependent diabetic can control her condition with the use of insulin . . . she cannot argue that her life is substantially limited by her condition."); *Murphy v. United Parcel Serv., Inc.,* 946 F.Supp. 872, 881 (D.Kan.1996) (rejecting EEOC view as contrary to statute[1]); *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 813–14 (N.D.Tex.1994) (same). As the majority of these courts have held, the EEOC's interpretation of the statute is the correct one.[2]

First, the EEOC's interpretation is consistent with the text of the statute. *See, e.g., Harris,* 102 F.3d at 521. *But see Coghlan,* 851 F.Supp. at 813 (claiming that the EEOC's "gloss reads 'limits' right out of the statute because an insulin-dependent diabetic who takes insulin could perform major life activities and would therefore not be limited"). The statute defines disability to include, "with respect to an individual . . . a physical . . . impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). A person with a serious disability who depends on medicine or a medical device to ameliorate the effects of that disability nonetheless has a limit on a major life activity: without the corrective measure the person would be unable to perform a major life activity. To put a condition on the activity of, for example, hearing, limits that ability, in the same way that putting a condition on the exercise of a right impairs that right. *See* 29 C.F.R. § 1630.2(j)(1)(ii) ("The term *substantially limits* means . . . [s]ignificantly restricted as to the *condition,* manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person" can do so.) (second emphasis added). An average person does not need to wear a hearing aid as a precondition to hearing a conversation, and a person who does require one may therefore be significantly limited in the major life activity of hearing.[3]

---

1. The *Murphy* court argues in addition that this portion of the guidelines is inconsistent with another provision that states that a person with controlled high blood pressure that is not substantially limiting might nonetheless be protected as a person who is regarded as having a disability. *See Murphy,* 946 F.Supp. at 880 ("[T]he interpretive guidelines in § 1630.2(*l*) implicitly suggest that a person who has controlled his blood pressure by medication does not have a disability; if this were not so, why would a person suffering from high blood [sic] ever have to look to the 'regarded as' section of the ADA . . . ?"). The fallacy of this argument is that it assumes that all uncontrolled high blood pressure is substantially limiting per se; a person with mild blood pressure problems may in many cases not suffer any adverse effects from the condition but might nonetheless be regarded by an uninformed employer as disabled and therefore suffer discrimination.

2. Because the appendix consists of interpretive, rather than legislative, rules, a reviewing court must conduct an independent evaluation of these guidelines, rather than simply following them if they are reasonable interpretations of the statute. *See Martin v. OSHRC,* 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991); 1 KENNETH CULP DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 6.3, at 242–43 (3d ed.1994). Nonetheless, such rules "are still entitled to some weight on judicial review." *Martin,* 499 U.S. at 157, 111 S.Ct. at 1179 (citations omitted). *See* ADMINISTRATIVE LAW TREATISE § 6.3, at 242–43 (agency interpretation should be given effect if persuasive). To the extent that the guidelines interpret the EEOC's regulations, they are "controlling [as to the regulations' meaning] unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* —— U.S. ——, ——, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997) (citations and internal quotation marks omitted).

3. Similarly, a person with only one foot is disabled under the ADA even if a prosthesis allows him to function just as well as most two-footed people. This is a core case of disability, *see Fallacaro,* 965 F.Supp. 87, 93–94, and if the medical device fails or is unavailable the impairment would limit the major life activity of walking. *See* 29 C.F.R. § 1630.2(i). To say that such a person does not suffer a limitation and is

Second, the EEOC's interpretation is consistent with the purpose of the ADA. The theory underlying the ADA requirement that employers make reasonable accommodations is that many disabilities can be overcome through technology or other assistance. *See* 42 U.S.C. §§ 12102(1), 12111(9). A person whose condition is *entirely* controlled will not need any additional accommodation under the Act: there is no problem to accommodate. Such a person could bring suit only if the employer discriminated against her in a more direct way. For example, a hearing-impaired sales representative could invoke the Act's protections if his employer fired him for wearing the aid in spite of a strict company dress code or, believing that a salesman with a hearing aid would project a poor image, refused to allow him to wear the device on the job. In such a case, the employee would be able to request a reasonable accommodation that would allow him to use the medical device—a waiver of the strict dress code, for example, assuming that was reasonable, or a special hearing-aid-compatible telephone. *See* H.R. REP. No. 101–485(II), at 64 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 346 ("For persons with hearing impairments, reasonable accommodations may include ... telephones compatible with hearing aids...."). Similarly, a person with a pacemaker is disabled under the Act: although he might be fully functional, he could certainly request a reasonable accommodation of being moved to a desk farther away from a microwave oven that could disrupt the medical device.[4] That a person with a disability is able to use medical knowledge or technology to overcome the effects of his condition (in Gilday's case, by a continuing regimen of medicine, proper eating habits, and rest) may mean that he will, in practice, rarely require any sort of accommodation; but, his achievement should not leave him subject to discrimination based on his underlying disability.[5]

Third, the Act's legislative history strongly supports this position and in fact served as the source of the EEOC's language. The House Education and Labor Committee Report, for example, states that

> [w]hether a person has a disability should be assessed *without regard to the availability of mitigating measures,* such as reasonable accommodations or auxiliary aids. For example, a person who is hard of hearing is substantially limited in the major life activity of hearing, even though the loss may be corrected through the use of a hearing aid. *Likewise, persons with impairments, such as epilepsy or diabetes, which substantially limit a major life activity are covered under the first prong of the definition of disability, even if the effects of the impairment are controlled by medication.*

H.R. REP. No. 101–485(II), at 53 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 334 (emphasis added). The other two relevant committee reports contain nearly identical language. *See* H.R. REP. No. 101–485(III), at 28–29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 451 (Judiciary Committee); S. REP. No. 101–116, at 23 (1989) (La-

---

therefore not disabled would strain the meaning of both terms. *See Fallacaro,* 965 F.Supp. 87, 93–94 ("The EEOC's 'no mitigating measures' interpretation embodies the sensible position that the use of a prosthetic aid or medication does not eliminate the underlying disability although it may, as a practical matter, reduce or even eliminate its effects.").

4. That such a person could request accommodation means that he is actually physically disabled under the Act, and not merely considered to be disabled or have a record of disability. *Compare* 42 U.S.C. § 12102(2)(A), *with id.* § 12102(2)(B), (C). A person without an actual disability would not need any accommodation.

5. Judge Kennedy's contention that the EEOC's position "creat[es] a different standard for persons who take medication for their condition" seems to apply better to her own theory than to the EEOC's. The Commission's position makes no distinction between people who have controlled their disabilities and those who have not. Under Judge Kennedy's theory, Gilday should be denied the protections of the ADA because he has independently taken the initiative and successfully brought his diabetes under control, but Gilday would be able to invoke the Act's protections had he, for example, been unable to muster the self-discipline to follow his regimen. It is hard to imagine that Congress wished to provide protection to workers who leave it to their employer to accommodate their impairments but to deny protection to workers who act independently to overcome their disabilities, and thus to create a disincentive to self-help.

bor and Human Resources Committee). Nothing in the legislative history suggests any disagreement with this position.

Because the EEOC's position is consistent with the text of the statute and finds compelling support in the logic and legislative history of the ADA, the existence of mitigating measures should not be taken into account when deciding whether a disability exists.[6] *See Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971) (adopting EEOC interpretation that was consistent with legislative history and purpose of antidiscrimination statute). The question in this case, then, is whether Gilday's diabetes in its uncontrolled state substantially limits a major life activity.

### 2. Whether Gilday has Produced Evidence that His Uncontrolled Diabetes Limits a Major Life Activity

■ Gilday has put forth sufficient evidence that his untreated diabetes constitutes a disability to withstand summary judgment. As noted above, he testified that before he began treatment he suffered from a variety of unpleasant physical symptoms of the condition. The natural inference is that if he were to stop treatment these symptoms would again manifest themselves. Equally importantly, Gilday testified that his condition caused his blood-sugar levels to fluctuate so that he became so irritable that he could not get along with co-workers and others. The ability to get along with coworkers and customers is necessary for all but the most solitary of occupations, and to the extent that his fluctuating blood-sugar levels impairs this, Gilday's diabetes may substantially limit his ability to work, a major life activity.[7] *See Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir.1996). *Cf. McKay*, 110 F.3d at 372 (stating relevant question as "whether plaintiff had carried her burden of establishing that her physical impairment significantly restricted her ability to perform 'either a class of jobs or a broad range of jobs in various classes'") (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Gilday has therefore put forth sufficient evidence to create a question of fact as to whether his diabetes constitutes a disability under the ADA.

### B. Whether Gilday has Produced Evidence that He was Qualified for the Position.

Defendants argue that even if Gilday is disabled, the grant of summary judgment should nonetheless be affirmed because Gilday's unpleasant disposition means he is not qualified to perform the essential functions of his job, i.e., treating co-workers and patients politely and being ready at a moment's notice. *See* Brief of Appellees Mecosta County et al. at 35–36. Again, disputed issues of material fact make summary judgment on this question inappropriate. The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can

---

6. This does not require the fact finder to "consider how a hypothetical person who did not take medication would compare." *See* Opinion of Kennedy, J., *post,* at 767. It requires a determination of how *this* person would fare without the medicine or medical device. Some diabetics would no doubt face relatively minor inconveniences if they took no steps to control their condition; others would lapse into comas and die. Gilday's case is somewhere between these two extremes: he has presented evidence that *his* diabetes mellitus seriously affected him both before he controlled it at all and also when his employment made it impossible for him to follow his regimen. This is precisely the individualized inquiry that the ADA demands.

7. Gilday additionally testified that his diabetes was the reason he engaged in the rudeness that precipitated his discharge. *See* J.A. at 1250, 1450–51. This might itself support his claim of discrimination under the Act. *See McPherson v. MHSAA*, 119 F.3d 453, 460 (6th Cir.1997) (en banc) (" '[F]ailure to consider the possibility of reasonable accommodation for known disabilities, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities.' ") (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 143 (2d Cir.1995)) (internal alterations omitted). And, "[a] person with an impairment who is discriminated against in employment is also limited in the major life activity of working," so long as that person is not "limited in his or her ability to perform only a particular job, because of circumstances unique to that job." H.R. REP. No. 101–485(III), at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 451. *Cf. McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir.1997) (holding that impairment which precluded only a narrow class of employment did not substantially limit working).

perform the essential functions" of his position. 42 U.S.C. § 12111(8). Gilday testified that if he had been moved to a less-busy station he could have better followed his regimen and he would not have suffered from the blood-sugar fluctuations that made him rude, and that he can get along with other people when he can follow his special schedule. That he is presently employed, apparently without problems, lends some support to this claim. This constitutes sufficient evidence to create a factual question as to whether, with accommodations, he could have performed the essential functions of his job. An employer cannot deny an accommodation that the worker claims will make him able to perform the job and then argue that the worker's allegedly correctable performance justified termination. *McPherson*, 119 F.3d 453, 460 (quoted *supra* at n. 7).

## IV. CONCLUSION

Gilday has presented sufficient evidence to create material questions of fact as to whether he is a qualified person with a disability vis a vis his former position at the Big Rapids station. The district court's grant of summary judgment is **REVERSED**. We remand the case for further proceedings. We express no opinion on any other issues in this case.[8]

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

Because I believe that there is an issue of fact as to whether plaintiff is substantially limited in work even with his medication, I concur that the case should be remanded for further proceedings. I agree with Judge Guy that the record presents an issue of fact as to whether plaintiff is substantially limited. However, because I believe the Court's interpretation of disability conflicts with the statutory requirement under the Americans with Disabilities Act ("ADA") that a disability "substantially limit" one or more of an individual's major life activities, I dissent.

The term "disability" is defined under the ADA to mean "with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of [such] individual." 42 U.S.C. § 12102(2)(A). Under the Court's interpretation of "disability," adopted from the EEOC's interpretive guidelines, "[t]he determination of whether an individual is substantially limited in a major life activity must be made ... without regard to mitigating measures such as medicines, or assistive or prosthetic devices." 29 C.F.R. § 1630 App. 1630.2(j).

The EEOC's position on mitigating measures appears not in the regulations themselves, but in an appendix to the regulations labeled "Interpretive Guidance on Title I of the Americans with Disabilities Act." 29 C.F.R. § 1630 App., Introduction. The appendix constitutes a set of interpretative, rather than legislative, rules and is, therefore, not binding law. *See Coghlan v. H.J. Heinz Co.*, 851 F.Supp. 808, 811–12 (N.D.Tex.1994). Nevertheless, "[s]uch administrative interpretations of the [ADA] by the enforcing agency, 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Grenier v. Cyanamid Plastics*, Inc., 70 F.3d 667, 672 (1st Cir.1995) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). An interpretative rule is still entitled to "some deference" where the rule is a "permissible construction of the statute." *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995).

In my opinion, the EEOC's rule on mitigating circumstances conflicts with the text of the ADA and is, therefore, not a "permissible construction of the statute." *Id.* To be "disabled" under 42 U.S.C. § 12102(2)(A), an individual must prove (1)

---

8. Although we would usually review the other issues raised below to determine whether summary judgment could be upheld on alternative grounds, appellees have not raised any other issues on appeal and have conceded that if the district court erred on the issue it found dispositive we should remand the case. Although we do not favor such a strategy, which could result in multiple appeals, we agree in this case that the district court should be the first to address the other issues.

that he has an impairment, and (2) that this impairment substantially limits a major life activity. The EEOC's rule is at odds with this second requirement. Under the EEOC's Interpretive Guidance, an individual is considered disabled even if, with the benefit of medication, the individual is not, in fact, substantially limited in any major life activity. The EEOC's rule, in effect, eliminates the statutory requirement that an impairment "substantially limit[ ]" a major life activity in order to constitute a disability. As a result, I believe that the ADA's definition of disability "cannot bear the interpretation adopted by" the EEOC in 29 C.F.R. § 1630 App. 1630.2(j), *Sullivan v. Everhart*, 494 U.S. 83, 92, 110 S.Ct. 960, 966, 108 L.Ed.2d 72 (1990), and, therefore, that this Court should not give effect to the EEOC's interpretive rule. *See Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) ("[O]f course, no deference is due to agency interpretations at odds with the plain language of the statute itself.").

I recognize that portions of the ADA's vast legislative history lend some support to the EEOC's position. Where the statutory text is unambiguous, however, as I believe it is here, that ends the matter. "[W]e do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147–48, 114 S.Ct. 655, 662, 126 L.Ed.2d 615 (1994). This is a case where "[i]t is unnecessary to consult the legislative history ... because the statute's terms are unmistakable." *Bower v. Federal Express Corp.*, 96 F.3d 200, 210 (6th Cir. 1996).

The interpretive rule would also appear to be in conflict with the EEOC regulations concerning "disability." There, it states:

The term *substantially limits* means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the aver-

age person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

Under the interpretive rule, we do not make an individualized comparison to the average person in the general population but, rather, we consider how a hypothetical person who did not take medication would compare. The EEOC's interpretive rule creates substantial limitations when no substantial limitation exists. Whether a plaintiff is disabled is an individualized inquiry which depends upon the particular circumstances at issue. *See, e.g., Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 487 (8th Cir.1996); *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 (6th Cir.1985). The inability to perform a particular job or the job of one's choice is *not* a disability. *See, e.g., McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997); *Gupton v. Commonwealth of Va.*, 14 F.3d 203, 205 (4th Cir.1994); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723–24 (2d Cir.1994); *Byrne v. Bd. of Educ., School of West Allis–West Milwaukee*, 979 F.2d 560, 565 (7th Cir.1992); *Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992).

The EEOC is creating a different standard for persons who take medication for their condition. This conflicts with the plain reading of the statute. The ADA does not provide protection for anyone with any degree of physical or mental impairment: It provides protection only for those whose impairments substantially limit their lives. I do not believe that Congress intended the ADA to protect as "disabled" all individuals whose life activities would *hypothetically* be substantially limited were they to stop taking medication. Of course, it may well be in some instances that the controlling medication (or other mitigating measure) will itself impose a substantial limitation on an individual's major life activities. In such cases, the individual will be "disabled" under the ADA. But where an impairment is fully controlled by mitigating measures and such measures do not themselves substantially limit an individual's major life activities, I believe the ADA provides no protection.

Plaintiff testified that his blood sugar becomes elevated when he has to deal with

stress and that it may take two to three days to bring it back under control. Stress is so common in the workplace that a condition which makes one unable to deal with stress may well substantially limit one in the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(1) provides:

> (3) With respect to the major life activity of *working*—

> (i) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.

Plaintiff's response to stress would restrict his ability to perform a wide range of jobs. Accordingly, I, too, would reverse the grant of summary judgment and remand for further proceedings.

RALPH B. GUY, Jr., Circuit Judge, concurring in part and dissenting in part.

I concur in the result reached in this case because I believe there are disputed material questions of fact which preclude a summary judgment on the question of disability.[1]

I dissent from section III.A.1. which addresses the issue of "mitigating measures."

In my view, the impact of mitigating measures must be decided on a case-by-case basis. In some cases a person with a "controlled" medical problem or condition will be completely functional and should be evaluated as such. In other cases a person with a controlled medical condition may still be under a disability as defined by the Act. Indeed, what is necessary to "control" the condition may be part of what makes the person disabled.

I also concur in that part of Judge Kennedy's opinion which states:

> As a result, I believe that the ADA's definition of disability "cannot bear the interpretation adopted by" the EEOC in 29 C.F.R. § 1630 App. 1630.2(j), *Sullivan v. Everhart*, 494 U.S. 83, 92, 110 S.Ct. 960, 966, 108 L.Ed.2d 72 (1990), and, therefore,

that this Court should not give effect to the EEOC's interpretative rule. *See Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 171, 109 S.Ct. 2854, 2863, 106 L.Ed.2d 134 (1989) ("[O]f course, no deference is due to agency interpretations at odds with the plain language of the statute itself.").

---

1. The issue of whether Gilday is a "qualified person" was not addressed by the district court, and I express no opinion on that issue.